

# UNITED STATES DISTRICT COURT
# EASTERN DISTRICT OF LOUISIANA

ANTHONY C. SMITH

CIVIL ACTION

VERSUS

NO. 00-95 c/w 00-908

ORLEANS PARISH CRIMINAL
DISTRICT COURT ET AL.

SECTION "L" (2)

## REPORT AND RECOMMENDATION

Plaintiff, Anthony C. Smith, is a convicted prisoner incarcerated in the Orleans Parish Prison system ("OPP"). Smith filed two separate complaints in this Court pro se and in forma pauperis pursuant to 42 U.S.C. § 1983. The named defendants are the Orleans Parish Criminal District Court, the Office of the District Attorney of Orleans Parish, the Louisiana Fourth Circuit Court of Appeal, the Louisiana Supreme Court, Orleans Parish Criminal Sheriff Charles C. Foti, Jr. and the Orleans Parish Prison. The lawsuits allege that Smith was improperly held in jail for 225 days without a hearing of any kind, that he received inadequate medical care while incarcerated at OPP and that other inmates were treated more favorably than he has been treated. Plaintiff seeks monetary damages. Record Doc. No. 1, Complaint at ¶ V.

DATE OF MAILING JUL 0 7 2000

DATE OF ENTRY
JUL 7 2000



On May 23, 2000, I conducted a telephone conference in this matter. Participating were plaintiff pro se and Linda P. Morin, counsel for defendants. Plaintiff was sworn and testified for all purposes permitted by Spears v. McCotter, 766 F.2d 179 (5th Cir. 1985), and its progeny. After the conference, because plaintiff's complaints contained similar allegations in both sets of papers, his lawsuits were consolidated for further preliminary proceedings before the magistrate judge. Record Doc. No. 19.

## THE RECORD

Plaintiff confirmed that his complaints assert the following general claims: (1) He was improperly held in jail for 225 days without a hearing after his arrest on a drug charge. (2) Favoritism is shown to other inmates. (3) He has received inadequate medical care. Smith testified that he is currently serving a sentence of 30 months in prison based on a drug possession charge to which he pleaded guilty in August 1999.

As to his claim that he was improperly incarcerated for 225 days, Smith testified that he was arrested and placed in OPP on November 15, 1998 on the drug charges for which he subsequently pleaded guilty. He stated that he did not go to court on those charges until June 28, 1999, and that he was not arraigned or given any other kind of pretrial hearing during that period of approximately 225 days after his arrest. Smith testified that when he first went to court he protested that he had not been taken to court earlier and argued that it was too late for him to be prosecuted on the charge. He stated

2

that he was taken through the criminal proceedings that led to his guilty plea despite the delay.

Smith testified that he filed a motion in the Louisiana Court of Appeal for the Fourth Circuit within 180 days of his arrest seeking dismissal of the charges on grounds of denial of due process. He testified that the Fourth Circuit denied his request to dismiss the charges against him, but issued an order requiring the trial court to conduct an arraignment and other preliminary proceedings.[1] Smith stated that upon remand to the Orleans Parish Criminal District Court, the trial court denied his motion to dismiss, conducted the preliminary proceedings and later accepted his guilty plea.

Plaintiff testified that after his guilty plea and sentencing, he did not appeal or file any post-conviction relief applications in the state court system. Instead, he filed these Section 1983 actions in federal court.

As to his claim of favoritism, Smith testified that some deputies in OPP are providing other inmates whom "they know off the streets" with drugs, alcohol or sex, which he alleged was "on video." He complained that these types of problems occur "not only here, but all over the United States." Asked to be more specific about these claims,

---

[1] Staff of the undersigned Magistrate Judge telephoned the Clerk of Court for the Fourth Circuit, who stated that the Fourth Circuit has no record of any writ application being filed by Anthony Smith. Smith did file a writ application with the Louisiana Supreme Court, which was granted on August 25, 1999 for the sole purpose of transfer to the trial court for initial decision. State v. Smith, 747 So. 2d 47, 47 (La. 1999). The Orleans Parish Criminal District Court's docket sheet indicates that it dismissed the motion as moot on September 9, 1999 because Smith had already pled guilty.

Smith testified that he cannot name any other inmate who received preferential treatment and stated that his evidence supporting this claim "would be on video." In one of his complaints, Smith alleged that "these two [deputies], Mrs. Moore and Mrs. Wells, has [sic] been providing inmates in Temp[leman] 2 on C-side with drugs, dope, alcohol and all kinds of sex, etc. from Nov[ember] 1999 to Feb[ruary] 2, 2000 . . . . Warden Howard and Chief Rudy, head of administration, can see all of this on video in the Control Center Room." C.A. No. 00-908, Record Doc. No. 1 (handwritten attachment to complaint, at p. 2). Plaintiff alleges that this constitutes "favoritism." On cross-examination, he could not provide any information indicating either that he has personal knowledge of these occurrences or any specifics as to how these alleged events have violated his constitutional rights. His testimony on this claim was so vague and ambiguous as to be nearly unintelligible.

As to his claims that he did not receive proper medical care, Smith testified that he had a sinus infection early in 2000 for which he is still being taken to Charity Hospital for treatment. He alleged generally that treatment of his sinus infection was delayed and denied. Smith generally confirmed the accuracy of the verified medical records submitted by counsel for defendants in response to my order. Record Doc. Nos. 3 and 14 in C.A. No. 00-95"L"(2). He confirmed that he was seen at OPP by various doctors for various problems, but his principal complaints in this case are that he failed to receive adequate

4

and timely treatment and medication for his sinus and psychiatric problems and that he frequently experienced delays of one or two months at a time in receiving medication or treatment in response to his requests for medical care and complaints about it.

Smith testified that his psychiatric problems include "hearing voices" and that he understands that he has been diagnosed as a paranoid schizophrenic. He stated that he first began receiving medication for his psychiatric problems around August 1998 and that he has been receiving this medication in OPP at times while being denied it at other times, but he could recall very little specifically about when he received it and when he did not. He deferred questions about when he received medication and when it was denied or delayed to what was "on paper." He stated: "All I know, I was getting treated, I was getting denied medical attention and things at the time, and I felt like they were . . . just mistreating me." He said that whenever he missed his medication for a month or two, "I filed on it." His testimony in this regard was apparently a reference to the various OPP grievance and medical request forms that he attached as exhibits to both of the instant complaints. He stated that he is currently receiving his psychiatric medication and has been receiving it "for a while now" after not receiving it at various times throughout 1998 and 1999.

He confirmed the notations in his verified medical records that he saw Dr. Blue about his sinus problem when a sheriff's deputy transported him to Charity Hospital for

treatment.  He testified that he was returned to Charity Hospital for his sinus problem several times.  Smith testified that he is being provided with Benadryl and antibiotics for his sinus problems and that surgery has been recommended to correct a nasal blockage. He testified that he has been taken to Charity Hospital within a month before the telephone conference.

Smith testified that he last saw a psychiatrist about his psychiatric problems in April or May 2000.  He confirmed that he is currently being given Prozac, after recently having been taken off Haldol, for his psychiatric problems, and that he is also being given Claritin and Benadryl for his sinuses.

The verified medical records through February 18, 2000, Record Doc. No. 14, indicate the following:  Plaintiff first complained about his mental problems at the jail on November 24, 1998 and his sinus problems on December 7, 1998.  He was seen by a physician and referred for a psychiatric evaluation on December 8, 1998 after complaining that he suffered from insomnia and headaches and needed Haldol and Elavil.   On December 21, 1998 and February 3, 1999, Smith again complained of sinus problems, sleeping problems and headaches, of hearing voices and of needing medication.  Plaintiff was seen by a physician and given Tylenol and vitamins on December 22, 1998.  Smith was evaluated by a psychiatrist on February 8, 1999.  Although the diagnoses are not intelligible, the doctor prescribed Haldol, an antipsychotic drug, and Prozac, an

antidepressant,[2] referred Smith to the medical clinic for his sinus problem and referred him to a social worker because of the death of his sister. The prison's medication orders indicate that plaintiff was given Haldol and Benadryl from February 10, 1999 through the end of May 1999.

The verified medical records also establish the following: Smith saw another doctor on March 21, 1999, but no diagnosis was made because plaintiff gave a poor history and was uncooperative. Smith met with a social worker on April 20, 1999 on referral from a Dr. Polk. The social worker reported that Smith was currently taking Haldol and other medications but was not taking them as prescribed because plaintiff was "scared of them" and thought they "looked different." The social worker's impressions included rule out psychosis and rule out depression with psychotic features. Plaintiff was referred to a psychiatrist for follow up. On May 24, 1999, Smith saw a doctor who diagnosed an upper respiratory infection and prescribed erythromycin, an antibiotic, for 10 days and Claritin. Smith was evaluated by a psychiatrist again on May 28, 1999. He complained that he was still hearing voices and having sinus problems. The doctor noted that plaintiff looked much better than he did in February. The diagnosis was mood disorder NOS. The doctor prescribed Prozac and Haldol.

_____

[2]The descriptions of prescription drugs herein were taken from <u>Dorland's Illustrated Medical Dictionary</u> (28th ed. 1994).

The verified medical records also include the following notations:  On June 29, 1999, plaintiff was seen by a Dr. Poseda.  The physician's orders indicate that Smith was found in possession of a bag of [prescription?] medications, which apparently had led to disciplinary action against him.  Dr. Poseda ordered that all [prescription?] medications be discontinued, with follow up as needed.  On June 28, 1999 and July 19, 1999, plaintiff submitted sick call requests that he needed his "crazy medicine."  He was interviewed by a physician on July 24, 1999 and was referred for psychiatric evaluation.  On September 14, 1999, Dr. Nguyen conducted a psychiatric follow up of plaintiff.  Dr. Nguyen's diagnosis was rule out psychosis.  He prescribed Benadryl, an antihistamine, and Haldol for 90 days each.  The medication orders indicate that plaintiff received both medications from September 19, 1999 through October 30, 1999.  On November 14 and 15, 1999, plaintiff complained of the flu and a cold.  He was seen by a nurse on November 16, 1999, who gave him a seven-day cold pack.  On January 4, 2000, Smith was examined by Dr. Blue, who diagnosed sinusitis and bronchitis and prescribed the antibiotic Amoxil for 10 days.

## ANALYSIS

### I.    STANDARDS OF REVIEW

"A federal court may dismiss a claim in forma pauperis 'if satisfied that the action is frivolous or malicious.'"  <u>Moore v. McDonald</u>, 30 F.3d 616, 620 (5th Cir. 1994)

(quoting former 28 U.S.C. § 1915(d), now incorporated in 28 U.S.C. § 1915(e), as amended).  A complaint is frivolous "if it lacks an arguable basis in law or fact."  Davis v. Scott, 157 F.3d 1003, 1005 (5th Cir. 1998); Reeves v. Collins, 27 F.3d 174, 176 (5th Cir. 1994).  The law "'accords judges not only the authority to dismiss a claim based on an indisputably meritless legal theory, but also the unusual power to pierce the veil of the complaint's factual allegations and dismiss those claims whose factual contentions are clearly baseless.'"  Macias v. Raul A. (Unknown), Badge No. 153, 23 F.3d 94, 97 (5th Cir. 1994) (quoting Neitzke v. Williams, 490 U.S. 319, 327 (1989)).

The purpose of a Spears hearing is to dig beneath the conclusional allegations of a pro se complaint, to ascertain exactly what the prisoner alleges occurred and the legal basis of the claims.  Spears, 766 F.2d at 180.  "[T]he Spears procedure affords the plaintiff an opportunity to verbalize his complaints, in a manner of communication more comfortable to many prisoners."  Davis, 157 F.3d at 1005. The information elicited at such an evidentiary hearing is in the nature of an amended complaint or a more definite statement under Fed. R. Civ. P. 12(e).  Wilson v. Barrientos, 926 F.2d 480, 481 (5th Cir. 1991); Adams v. Hansen, 906 F.2d 192, 194 (5th Cir. 1990).  "Upon development of the actual nature of the complaint, it may also appear that no justiciable basis for a federal claim exists."  Spears, 766 F.2d at 182.

9

The Court may make only limited credibility determinations in a <u>Spears</u> hearing, <u>Norton v. Dimazana</u>, 122 F.3d 286, 292 (5th Cir. 1997) (citing <u>Cay v. Estelle</u>, 789 F.2d 318, 326-27 (5th Cir. 1986), <u>overruled on other grounds by Denton v. Hernandez</u>, 504 U.S. 25, 112 S.Ct. 1728 (1992)), and may consider and rely upon documents as additional evidence, as long as they are properly identified, authentic and reliable.   "The Court should allow proper cross-examination and should require that the parties properly identify and authenticate documents.   A defendant may not use medical records to refute a plaintiff's testimony at a <u>Spears</u> hearing."   <u>Id.</u> (citing <u>Wilson</u>, 926 F.2d at 482-83; <u>Williams v. Luna</u>, 909 F.2d 121, 124 (5th Cir. 1990)).

After a <u>Spears</u> hearing, the complaint may be dismissed as legally frivolous if it lacks an arguable basis in law, <u>Jackson v. Vannoy</u>, 49 F.3d 175, 176-77 (5th Cir. 1995); <u>Moore v. Mabus</u>, 976 F.2d 268, 269 (5th Cir. 1992), or "as factually frivolous only if the facts alleged are 'clearly baseless,' . . . [or] when the facts alleged rise to the level of the irrational or wholly incredible."   <u>Id.</u> at 270.

"'A complaint lacks an arguable basis in law if it is based on an indisputably meritless legal theory, such as if the complaint alleges the violation of a legal interest which clearly does not exist.'"   <u>Davis</u>, 157 F.3d at 1005 (quoting <u>McCormick v. Stalder</u>, 105 F.3d 1059, 1061 (5th Cir. 1997)).   "When a complaint raises an arguable question of law which the district court ultimately finds is correctly resolved against the plaintiff,

10

dismissal under Rule 12(b)(6) is appropriate; however, dismissal under the section 1915(d) standard is not." Moore, 976 F.2d at 269. A prisoner's in forma pauperis complaint which fails to state a claim may be dismissed sua sponte at any time under 28 U.S.C. § 1915(e)(2) and 42 U.S.C. § 1997e(c)(1).

In this case, plaintiff's complaint may be dismissed under 28 U.S.C. § 1915(e) and 42 U.S.C. § 1997e(c)(1), either as frivolous because it lacks an arguable basis in law or under Rule 12(b)(6) in light of his testimony explaining the factual basis of his claims. Plaintiff's complaint, as amended by his testimony at the Spears hearing, fails to state a claim under the broadest reading.[3]

II.    PROSECUTORIAL IMMUNITY

Smith has sued "the Office of the District Attorney of Orleans Parish." To the extent that he may be asserting claims against the Orleans Parish District Attorney in his individual capacity, the District Attorney is immune from suit.

Courts employ a "functional" test to determine whether officials are entitled to absolute immunity, in which they look to the "nature of the function performed, not the identity of the actor who performed it." Forrester v. White, 484 U.S. 219, 227-29 (1988); Hulsey v. Owens, 63 F.3d 354, 356 (5th Cir. 1995). It is well established that prosecutors

---

[3]Pro se civil rights complaints must be broadly construed, Moore, 30 F.3d at 620, and I have broadly construed the complaint in this case.

11

are immune from liability under Section 1983 for actions taken as an advocate in pursuit of a criminal prosecution.  Cleavinger v. Saxner, 474 U.S. 193, 200 (1985); Spivey v. Robertson, 197 F.3d 772, 775 (5th Cir. 1999); Graves v. Hampton, 1 F.3d 315, 318 (5th Cir. 1993), abrogated in part on other grounds by Arvie v. Broussard, 42 F.3d 249, 250 (5th Cir. 1994).  This immunity applies to a prosecutor's actions "in initiating prosecution and in carrying the case through the judicial process."  Id.; accord Buckley v. Fitzsimmons, 509 U.S. 259, 270, 272 (1993).

Thus, "[a] prosecutor enjoys absolute immunity from personal liability for damages under section 1983 for actions 'initiating a prosecution and . . . presenting the State's case' and those 'intimately associated with the judicial phase of the criminal process.'"  Esteves v. Brock, 106 F.3d 674, 676 (5th Cir. 1997) (quoting Imbler v. Pachtman, 424 U.S. 409, 430-31 (1976)). "A prosecutor's absolute immunity will not be stripped because of action that was in error, was done maliciously, or was in excess of his authority; rather, he will be subject to liability only when he has acted in the clear absence of all jurisdiction." Kerr v. Lyford, 171 F.3d 330, 337 & n.10 (5th Cir. 1999) (quotations omitted) (citing Stump v. Sparkman, 435 U.S. 349, 356-57 (1978); Butz v. Economou, 438 U.S. 478, 510 (1978)).

In the instant case, the District Attorney's actions concerning criminal charges against Smith in Orleans Parish form the exclusive basis of plaintiff's claims against them.

The District Attorney's actions in initiating and pursuing the prosecution of Smith fall well within the ambit of the judicial phase of the criminal process for which prosecutors are immune from liability.  Plaintiff has failed to allege any actions in which the District Attorney was functioning outside the scope of prosecutorial immunity.  Therefore, all claims against the District Attorney in his individual capacity must be dismissed.

III.    THE DEFENDANT ENTITIES ARE NOT PROPER DEFENDANTS

Section 1983 claims may be asserted only against "persons" as the statute and case law define that term.  The Orleans Parish Criminal District Court, the Office of the District Attorney of Orleans Parish, the Louisiana Fourth Circuit Court of Appeal, the Louisiana Supreme Court and the Orleans Parish Prison are not entities that can be sued under Section 1983 because they are not juridical entities under state law capable of being sued and/or because they are not persons for purposes of suit under Section 1983.

A prison or jail is not a person for purposes of suit under Section 1983.  United States ex rel. Arzonica v. Scheipe, 474 F.2d 720, 721 (3d Cir. 1973); Cullen v. DuPage County, No. 99C1296, 1999 WL 1212570, *1 (N.D. Ill. Dec. 14, 1999); Whitley v. Westchester County Correctional Facility Admin., No. 97CIV0420(SS), 1997 WL 659100, at *6 (S.D.N.Y. Oct. 22, 1997); Sponsler v. Berks County Prison, No. 95-1136, 1995 WL 92370, at *1 (E.D. Pa. 1995); Powell v. Cook County Jail, 814 F. Supp. 757, 758 (N.D. Ill. 1993).

13

A state court, such as the Orleans Parish Criminal District Court, the Louisiana Fourth Circuit Court of Appeal and the Louisiana Supreme Court, is not a person for purposes of suit under Section 1983. Mumford v. Basinski, 105 F.3d 264, 267 (6th Cir. 1997); Harris v. Champion, 51 F.3d 901, 905 (10th Cir. 1995); Clark v. Clark, 984 F.2d 272, 272 (8th Cir. 1993); Ward v. Morris, 895 F. Supp. 116, 117 (N.D. Miss. 1995); Moity v. Louisiana State Bar Ass'n, 414 F. Supp. 180, 182 (E.D. La.), aff'd, 537 F. 2d 1141 (5th Cir. 1976).

The Orleans Parish District Attorney's Office is not an entity that can be sued under Louisiana law, nor is it a person capable of being sued under 42 U.S.C. § 1983. Burge v. Parish of St. Tammany, No. 91-2321, 1997 WL 10243, at *8 (E.D. La. Jan. 8, 1997), aff'd in part, 187 F.3d 452 (5th Cir. 1999); cf. Steed v. Delohery, No. 96 Civ. 2449(RPP), 1998 WL 440861, *1 (S.D.N.Y. Aug. 4, 1998) (under New York law, county district attorney's office is not a legal entity capable of suing or being sued); Jacobs v. Port Neches Police Dep't, 915 F. Supp. 842, 844 (E.D. Tex. 1996) (same under Texas law).

Accordingly, Smith's claims against the Orleans Parish Criminal District Court, the Office of the District Attorney of Orleans Parish, the Louisiana Fourth Circuit Court of Appeal, the Louisiana Supreme Court and the Orleans Parish Prison must be dismissed.

## IV.   PRETRIAL INCARCERATION WITHOUT INITIAL HEARING

Smith alleges that he was deprived of due process because he was incarcerated for approximately 225 days without an initial hearing.  He asserts in his papers filed in this Court that the charges against him should have been dismissed because of this violation. He testified that when he first went to court he protested that he had not been taken to court earlier and argued that it was too late to be prosecuted on the charge.  He stated that he was taken through the criminal proceedings that led to his guilty plea despite the delay. He pled guilty and was sentenced to imprisonment for 30 months with credit for time served.[4]  Smith's allegations state a claim that he was deprived of a liberty interest in not being prosecuted without an initial hearing.

Even if Smith could name a proper defendant, to recover under Section 1983 for either a substantive or a procedural due process violation, Smith must demonstrate that he was "denied a cognizable liberty or property interest clearly established either by state law or the United States Constitution."  Wooley v. City of Baton Rouge, 211 F.3d 913, 919 (5th Cir. 2000); accord Sandin v. Connor, 515 U.S. 472, 481-83 (1995) (liberty interest);

---

[4]Staff of the undersigned Magistrate Judge obtained from the Criminal District Court and the OPP legal counsel copies of the Criminal District Court's docket sheet in Smith's criminal case and that court's minute entry dated August 12, 1999, when Smith pled guilty.  The docket sheet indicates that a bill of information was filed on November 20, 1998 and that Smith's arraignment was set for November 25, 1998, but that defendant did not appear on that date.  The docket sheet indicates that Smith first appeared on June 29, 1999 for a hearing, that the court appointed counsel for him and that he pled not guilty.  The August 12, 1999 minute entry states that Smith pled guilty and was sentenced to 30 months at hard labor without benefit of probation or suspension, but "with credit for time served from 11/15/98 until 8/12/99." The docket sheets are attached hereto for filing in the record.

<u>Bryan v. City of Madison</u>, (to be reported at 213 F.3d 267), No. 99-60305, 2000 WL 674766, at *6 (5th Cir. June 9, 2000) (property interest). "While no State may 'deprive any person of life, liberty, or property, without due process of law,' it is well-settled that only a limited range of interests fall within this provision. Liberty interests protected by the Fourteenth Amendment may arise from two sources--the Due Process Clause itself and the laws of the States." <u>Hewitt v. Helms</u>, 459 U.S. 460, 466 (1983) (citing <u>Meachum v. Fano</u>, 427 U.S. 215, 223-27 (1976)).

The Court must therefore analyze whether Louisiana law provides Smith with a protected liberty interest in receiving an initial hearing and in having the charges against him dismissed if he did not receive such a hearing. Under Louisiana law, an arrestee is entitled to be brought before a judge within 72 hours of arrest for the purpose of receiving appointment of counsel. At this appearance, the court may also, in its discretion, determine or review a prior determination of the amount of bail. La. Code Crim. P. art. 230.1(A), (B).

> C. If the arrested person is not brought before a judge in accordance with the provisions of Paragraph A of this Article, he shall be released forthwith.
> D. The failure of the sheriff or law enforcement officer to comply with the requirements herein shall have no effect whatsoever upon the validity of the proceedings thereafter against the defendant.

<u>Id.</u> art. 230.1(C), (D).

16

In addition, persons in custody pursuant to a warrantless arrest are entitled to a determination of probable cause by a magistrate within 48 hours of arrest, although the defendant need not be present for such a determination. La. Code Crim. P. art. 230.2(A). "If a probable cause determination is not timely made in accordance with the provisions of Paragraph A of this Article, the arrested person shall be released on his own recognizance." Id. art. 230.2(B).

A felony arrestee who has not been indicted by a grand jury may also request a preliminary examination at any time, which must be granted if requested. Id. art. 292. Probable cause and bail, if necessary, will be determined at the preliminary examination. Id. art. 296.

Under Louisiana case law, violations of these and similar deadlines or procedures are rendered moot by a criminal defendant's subsequent conviction. "Detention beyond the statutory period [for filing an indictment or bill of information] is illegal, but the illegality ceases when a significant judicial event subsequently occurs. . . . In the present case the illegality of detaining relator ended when prosecution was instituted, although the statutory period had already elapsed . . . . " State v. Varmall, 539 So. 2d 45, 46 (La. 1989); accord State ex rel Cosey v. State, 635 So. 2d 1140, 1140 (La. 1994); State v. Boniface, 650 So. 2d 1222, 1222 (La. App. 4th Cir. 1995).

17

In State v. Wallace, 392 So. 2d 410, 413 (La. 1980), defendant had been released without bail because he had not been brought before a judge within 72 hours after his arrest as required by La. Code Crim. P. art. 230.1.  The Louisiana Supreme Court plainly held that his detention after that period had been illegal.  However, defendant was properly rearrested and prosecuted after a finding of probable cause at a preliminary hearing, a "significant judicial event" that ended the period of illegal detention.  Id. at 413-14.

Based on Wallace and Varmall, Louisiana's intermediate appellate courts have held that a defendant's conviction renders moot a procedurally illegal detention.  In State v. Williams, 692 So. 2d 509, 513 (La. App. 3d Cir. 1997), the court held that defendant's detention for more than three months until he was arraigned was illegal, "but this illegality ceased when he was actually arraigned."  In the same case, defendant alleged that a violation of his right to a speedy trial under Louisiana Code of Criminal Procedure article 701 invalidated his conviction.  Like Louisiana Code of Criminal Procedure article 230.1, "[h]owever, this article merely authorized the pre-trial release of defendant, and upon a defendant's conviction, the issue is moot."  Id. at 514 (citing State v. McSweeney, 619 So. 2d 861, 865 (La. App. 3d Cir. 1993); State v. Cowger, 581 So. 2d 283 (La. App. 5th Cir. 1991); State v. Johnston, 480 So. 2d 823 (La. App. 2d Cir. 1985)).

The Third Circuit in Williams also held that the nine-month delay in defendant's trial did not violate his due process rights because the reasons for the delay were valid and

the delay did not prejudice his rights.  Id.  The Louisiana Supreme Court has held that a

defendant's due process rights are not violated when he is not brought before a judge

within 72 hours of arrest, in the absence of a showing of prejudice.  State v. Tauzier, 397

So. 2d 494, 504-05 (La. 1981), superseded by statute on other grounds as stated in State

v. Shropshire, 471 So.2d 707, 709 (La. 1985); accord State v. Bouie, 598 So. 2d 610, 611

(La. App. 4th Cir. 1992).

Similarly, a failure to conduct a preliminary examination is rendered moot by the

defendant's subsequent conviction, in the absence of a showing of prejudice.  State v.

Bullard, 700 So. 2d 1051, 1057 (La. App. 2d Cir. 1997) (citing State v. Washington, 363

So. 2d 509 (La. 1978); State v. Gates, (La. App. 2d Cir. 1994)).

These statutes and cases establish that Louisiana law does not create an actionable

substantive liberty interest in having a post-arrest hearing because those rights are waived

once the defendant has been convicted.  The conviction moots any interest that the

defendant had in being released as a result of the State's violation of the 72-hour rule or

in receiving a determination of probable cause either following a warrantless arrest or at

a preliminary examination.

Smith can show no prejudice as a result of the delay in receiving an initial hearing.

He had no right under state law to have the charges against him dismissed because of the

delay; his only right was to be released without bail.  Because he pled guilty as charged

and because his sentence gave him credit for time served, he suffered no prejudice from the delayed hearing.

Moreover, even assuming that plaintiff had a liberty interest, in deciding whether state action has violated an individual's right to procedural due process, the Court must ask "whether the state procedures available for challenging the deprivation satisfy the requirements of due process." Augustine v. Doe, 740 F.2d 322, 327 (5th Cir. 1984). Smith alleges that he was deprived of his interest in having an initial hearing and having his charges dismissed without due process of law.

A state actor's random and unauthorized deprivation of a plaintiff's property, whether negligent or intentional, does not result in a violation of procedural due process rights if the state provides an adequate post-deprivation remedy. Alexander v. Ieyoub, 62 F.3d 709, 712 (5th Cir. 1995) (citing Parratt v. Taylor, 451 U.S. 527 (1981), overruled in part on other grounds, Daniels v. Williams, 474 U.S. 327 (1986); Hudson v. Palmer, 468 U.S. 517 (1984)). The same reasoning has been applied to alleged deprivations of liberty interests, when state law provides an adequate post-deprivation remedy. Brown v. Day, No. 93-0385, 1993 WL 85932, at *2 (E.D. La. Mar. 12, 1993) (Arceneaux, J.). In the instant case, Louisiana Code of Criminal Procedure articles 230.1 and 230.2 provide that the remedy for violations of those rules is release without bail, not dismissal of the charges. Plaintiff also has a damages remedy under state tort law. Because Louisiana law

provides him with an adequate post-deprivation remedy, plaintiff's Section 1983 claim for a procedural due process violation is precluded.

"It is axiomatic that a plaintiff who files suit under 42 U.S.C. § 1983 may recover only if he proves a constitutional violation . . . ." Lewis v. Woods, 848 F.2d 649, 652 (5th Cir. 1988) (citing Baker v. McCollan, 443 U.S. 137, 142 (1979)).  In the instant case, Smith has not alleged a constitutional violation because he has no liberty interest under state law in having a post-arrest hearing and dismissal of the charges against him, and because he has an adequate post-deprivation remedy under state law.  Thus, this claim must be dismissed.

V.     FAVORITISM

Smith's claim that "favoritism" is occurring at OPP because some inmates are allegedly provided with drugs, alcohol and sex while he is not fails completely to state a claim of violation of constitutional rights cognizable under Section 1983.  I cannot conceive how constitutional rights may be implicated by allegations that plaintiff is not receiving drugs, alcohol and sex in jail, while others are.

Moreover, plaintiff was unable to provide any specifics of his favoritism claim. Mere conclusory statements are not sufficient to state a claim under Section 1983.  Dayse v. Schuldt, 894 F.2d 170, 173 (5th Cir. 1990); Van Cleave v. United States, 854 F.2d 82, 84 (5th Cir. 1988).  Pro se actions under Section 1983 brought by prisoners proceeding

21

in forma pauperis have been dismissed as frivolous where they asserted wholly conclusory, non-specific allegations. See, e.g., Biliski v. Harborth, 55 F.3d. 160, 162 (5th Cir. 1995) (conclusory claims of inadequate medical and dental care); Wilson v. Budney, 976 F.2d 957, 958 (5th Cir. 1992) (conclusory allegations of conspiracy); Dayse, 894 F.2d at 172-73 (plaintiff "wholly unable" to make fact-specific allegations of conspiracy). Therefore, this claim must be dismissed.

VI.    INADEQUATE MEDICAL CARE

Smith was a pretrial detainee for part of the time and a convicted prisoner at all other times about which he complains. Before the Fifth Circuit's decision in Hare v. City of Corinth, 74 F.3d 633 (5th Cir. 1996), it appeared that prison officials must provide pretrial detainees with reasonable medical care unless the failure to provide it was reasonably related to a legitimate government interest. Bell v. Wolfish, 441 U.S. 520, 539 (1979); Cupit v. Jones, 835 F.2d 82, 85 (5th Cir. 1987); Mayweather v. Foti, 958 F.2d 91 (5th Cir. 1992). The inquiry was "whether the denial of medical care . . . was objectively reasonable in light of the Fourteenth Amendment's guarantee of reasonable medical care and prohibition on punishment of pretrial detainees." Pfannstiel v. City of Marion, 918 F.2d 1178, 1186 (5th Cir. 1990), abrogated on other grounds as recognized in Martin v. Thomas, 973 F.2d 449, 455 (5th Cir. 1992).

In Hare, however, the Fifth Circuit held:

22

> (1) that the State owes the same duty under the Due Process Clause and the Eighth Amendment to provide both pretrial detainees and convicted inmates with basic human needs, including medical care and protection from harm, during their confinement; and (2) that a state jail official's liability for episodic acts or omissions cannot attach unless the official had subjective knowledge of a substantial risk of serious harm to a pretrial detainee but responded with deliberate indifference to that risk.

Hare, 74 F.3d at 650. The Court explained that for the Bell "reasonable relationship" test to be applicable, the pretrial detainee must be able to show that a prison official's act either "implement[s] a rule or restriction or otherwise demonstrate[s] the existence of an identifiable intended condition or practice" or that the "official's acts or omissions were sufficiently extended or pervasive, or otherwise typical of extended or pervasive misconduct by other officials, to prove an intended condition or practice." Id. at 645. If the pretrial detainee is unable to prove either, the incident will be considered to be an episodic act or omission and the deliberate indifference standard enunciated in Estelle v. Gamble, 429 U.S. 97, 104 (1976), will apply. Id.

In Estelle, the Supreme Court held that a convicted prisoner may succeed on a claim for damages under 42 U.S.C. § 1983 for inadequate medical care only if he demonstrates that there has been "deliberate indifference to serious medical needs" by prison officials or other state actors. Only deliberate indifference, "an unnecessary and wanton infliction of pain . . . or acts repugnant to the conscience of mankind," constitutes conduct proscribed by the Eighth Amendment. Id. at 105-06; accord Gregg v. Georgia, 428 U.S.

23

153, 182-83 (1976); <u>Hare</u>, 74 F.3d at 650. "Deliberate indifference" means that a prison official is liable "only if he knows that the inmates face a substantial risk of serious harm and [he] disregards that risk by failing to take reasonable measures to abate it." <u>Farmer v. Brennan</u>, 511 U.S. 825, 847 (1994). The <u>Farmer</u> definition applies to Eighth Amendment medical claims. <u>Reeves v. Collins</u>, 27 F.3d 174, 176 (5th Cir. 1994).

Further, the plaintiff must establish that the defendant possessed a culpable state of mind. <u>Farmer</u>, 511 U.S. at 838 (citing <u>Wilson v. Seiter</u>, 501 U.S. 294, 298 (1991)). A prison official cannot be held liable "unless the official knows of and disregards an excessive risk to inmate health or safety; the official must both be aware of facts from which the inference could be drawn that a substantial risk of serious harm exists, and he must also draw the inference." <u>Id.</u> at 837. If the court finds that one of the components of the test is not met, it need not address the other component. <u>Davis v. Scott</u>, 157 F.3d 1003, 1005 (5th Cir. 1998).

> The Supreme Court has recently reaffirmed that "deliberate indifference" is a <u>stringent</u> standard of fault, requiring proof that a municipal actor disregarded a known or obvious consequence of his action. <u>Board of the County Commissioners of Bryan County, Oklahoma v. Brown</u>, 520 U.S. 397, 117 S.Ct. 1382, 1391 (1997) . . . . The "deliberate indifference" standard permits courts to separate omissions that "amount to an intentional choice" from those that are merely "unintentionally negligent oversight[s]."

Southard v. Texas Bd. of Crim. Justice, 114 F.3d 539, 551 (5th Cir. 1997) (citations omitted) (emphasis added). "'Subjective recklessness,' as used in the criminal law, is the appropriate test for deliberate indifference." Norton, 122 F.3d at 291.

In the instant case, plaintiff's pleadings as expanded by his testimony establish that nothing more than episodic acts or omissions as defined in Hare are at issue in this case. Thus, the "deliberate indifference" standard applies and plaintiff must allege facts sufficient to establish that defendants knew he faced a substantial risk of serious harm and disregarded that risk by failing to take reasonable measures to abate it. In this case, plaintiff fails completely to allege such facts.

Smith's allegations negate any inference that defendants acted with deliberate indifference to his serious medical needs. Initially, it cannot be concluded that the conditions he described, including his sinus and psychiatric problems, presented serious medical needs that posed a substantial risk of harm during his incarceration at OPP. See Sibley v. Lemaire, 184 F.3d 481, 489 (5th Cir. 1999) (pretrial detainee's "increasingly erratic" behavior not sufficiently serious to alert jail officials to serious risk that detainee would harm himself); Ervin v. Busby, 992 F.2d 147, 150-51 (8th Cir. 1993) (denial of antidepressant medication for one month, causing plaintiff to suffer nightmares and agitation, not a serious medical need or substantial risk of harm); Martin v. Tyson, 845 F.2d 1451, 1457-58 (7th Cir. 1988) (delay in treating tooth ache and ear infection not

sufficiently serious); <u>Griffin v. DeRobertis</u>, 557 F. Supp. 302, 306 (N.D. Ill. 1983) (aches

and sore throat not serious); <u>Banks v. Mannoia</u>, 890 F. Supp. 95, 99 (N.D.N.Y. 1995)

("'bowel problems'" and headaches not serious medical problems); <u>Gibson v. McEvers</u>,

631 F.2d 95 (7th Cir. 1980) (cold symptoms do not present serious medical need); <u>cf.</u>

<u>Baker v. Brantley County</u>, 832 F. Supp. 346, 352 (S.D. Ga. 1993), <u>aff'd</u>, 19 F.3d 37

(11th Cir. 1994) (pneumonia is a serious medical need, but no deliberate indifference

existed when plaintiff was examined by physician and received prescription medication);

<u>Oldham v. Chandlor-Halford</u>, 877 F. Supp. 1340, 1355 (N.D. Iowa 1995) (fractured wrist

is a serious medical need). Smith's testimony about his psychiatric and sinus problems did

not identify any serious risks of harm or any actual harm resulting from the alleged delays

in treatment, and they do not rise to the level of serious medical needs for purposes of

constitutional analysis.

Even assuming, however, that plaintiff's medical conditions were serious, he has

alleged facts, confirmed by the medical records, that negate any inference of deliberate

indifference by jail officials. Plaintiff's complaint, as amended by his testimony and

confirmed by the medical records, shows that he received appropriate medical care while

incarcerated in OPP. Smith testified that he last saw a psychiatrist in April or May 2000

and that he had been taken to Charity Hospital several times in 2000, including once within

the month before the telephone conference, for his sinus problem. He deferred to what was "on paper," and he generally confirmed the accuracy of the verified medical records.

Those records show that plaintiff was seen by a physician for his sinus and/or psychiatric conditions on December 8, 1998; December 22, 1998; February 8, 1999; March 21, 1999; May 24, 1999; May 28, 1999; June 29, 1999; September 14, 1999 and January 4, 2000. He was also seen by a social worker for a psychological problem on April 20, 1999 and by a nurse for a cold or flu on November 16, 1999. He testified that he was currently receiving medication for his sinus and psychiatric problems. The medical records reveal that, for his complaints of sinus problems, plaintiff variously received Tylenol, vitamins, Benadryl, Claritin, antibiotics and a seven-day cold pack on December 22, 1998; February 10, 1999 through May 31, 1999; May 24, 1999; November 16, 1999; and January 4, 2000.

For his psychiatric condition, the medical records confirm that Smith was prescribed Haldol and Prozac on February 8, 1999 and May 28, 1999. The medication orders show that he actually received Haldol from February 10, 1999 through May 31, 1999, although he told the social worker on April 20, 1999 that at times he refused to take the medications he was given. His medications were discontinued on June 29, 1999 for disciplinary reasons. Haldol was again prescribed on September 14, 1999, with the medication orders indicating that he received it from September 14, 1999 through October 30, 1999.

27

Although plaintiff has alleged delay in medical care between the time he first requested treatment and the time it was provided, and he has expressed dissatisfaction with the speed and effectiveness of his treatment, none of his allegations rise to the level of deliberate indifference necessary to establish a constitutional violation cognizable under Section 1983.

First, mere delay in receiving care is not in and of itself a constitutional violation. Mendoza v. Lynaugh, 989 F.2d 191, 195 (5th Cir. 1993); Wesson v. Oglesby, 910 F.2d 278, 284 (5th Cir. 1990); Simons v. Clemens, 752 F.2d 1053, 1056 (5th Cir. 1985). Regardless of the length of delay, plaintiff at a minimum must show deliberate indifference to serious medical needs.  Wilson, 501 U.S. at 298.  The delay about which plaintiff complains did not cause "a life-long handicap or permanent loss" sufficient to constitute a serious medical need for constitutional purposes.  See Hill v. Dekalb Reg'l Youth Detention Ctr., 40 F.3d 1176, 1188 (11th Cir. 1994) (citing Monmouth County v. Lanzaro, 834 F.2d 326, 347 (3d Cir. 1987) ("Where the delay [in medical care] results in an inmate's suffering 'a life-long handicap or permanent loss, the medical need is serious.'")); Wesson, 910 F.2d at 283-84 (minor delay in escorting injured prisoner to prison infirmary for treatment of swollen wrists with some bleeding cannot be construed as deliberate indifference to serious medical needs).  No such permanent loss resulting from delay has been alleged in this case.

Second, while it is clear from plaintiff's allegations and testimony that he is not satisfied with the speed or effectiveness of his medical care, it is equally clear that the medical care provided was reasonable, prompt and constitutionally adequate. Certainly, no finding of deliberate indifference to his medical needs can be made based on this record. Plaintiff was examined and received medication in response to his complaints. Contentions like Smith's that amount to a mere disagreement with the speed, quality or extent of medical treatment or even negligence do not give rise to a Section 1983 claim. "[A]lthough inadequate medical treatment may, at a certain point, rise to the level of a constitutional violation, malpractice or negligent care does not." Stewart v. Murphy, 174 F.3d 530, 534 (5th Cir. 1999) (citation omitted) (active treatment of prisoner's serious medical condition, which ultimately resulted in death, does not constitute deliberate indifference, even if treatment was negligently administered); see Norton, 122 F.3d at 291-92; Varnado v. Lynaugh, 920 F.2d 320, 321 (5th Cir. 1991); Mendoza, 989 F.2d at 193 (prisoner's disagreement with the type or timing of medical services provided cannot support a Section 1983 claim); Wesson, 910 F.2d at 284 (allegations establishing provision of medical treatment found inconsistent with inference of deliberate indifference). Therefore, plaintiff's complaints in this case about his medical care advance a legally frivolous argument and fail to state a claim for relief under Section 1983.

29

At best, Smith's allegations in this complaint amount to claims of negligence because he claims that he was treated too slowly and should have received different kinds and amounts of treatment than he actually received.  However, claims arising out of merely negligent acts do not give rise to relief under Section 1983.  The Supreme Court has held that "the Due Process Clause is simply not implicated by a negligent act of an official causing unintended loss or injury to life, liberty or property."  Daniels v. Williams, 474 U.S. 327, 328 (1986); Davidson v. Cannon, 474 U.S. 344, 347 (1986).  In addition, as noted above, mere disagreement or dissatisfaction with the type or extent of medical treatment provided cannot support a Section 1983 claim.  Mendoza, 989 F.2d at 193; Varnado, 920 F.2d at 321.  Therefore, to the extent plaintiff is actually alleging that his medical condition was negligently or improperly handled by prison officials, he advances a legally frivolous argument and fails to state a claim for relief under Section 1983.

## VII.    AMENDMENT TO NAME PROPER DEFENDANTS WOULD BE FUTILE

Finally, even if Smith were provided with an opportunity to amend his complaint to add proper defendants, such an amendment would be impermissibly futile because the facts on which he bases his claims establish that any claims he might assert under Section 1983 are legally frivolous and fail to state a cognizable claim that his constitutional rights have been violated in any way.  Wimm v. Jack Eckerd Corp., 3 F.3d 137, 139 (5th Cir. 1993).

30

## RECOMMENDATION

For all of the foregoing reasons, it is **RECOMMENDED** that plaintiff's complaint be **DISMISSED WITH PREJUDICE** as legally frivolous and/or for failure to state a claim under 28 U.S.C. § 1915(e)(2) and 42 U.S.C. § 1997e(c)(1).

A party's failure to file written objections to the proposed findings, conclusions, and recommendations in a magistrate judge's report and recommendation within ten (10) days after being served with a copy shall bar that party, except upon grounds of plain error, from attacking on appeal the unobjected-to proposed factual findings and legal conclusions accepted by the district court, provided that the party has been served with notice that such consequences will result from a failure to object. <u>Douglass v. United Servs. Auto Ass'n</u>, 79 F.3d 1415, 1430 (5th Cir. 1996) (en banc).

New Orleans, Louisiana, this _____ day of July, 2000.

JOSEPH C. WILKINSON, JR.
UNITED STATES MAGISTRATE JUDGE

CRIMINAL DISTRICT COURT
PARISH OF ORLEANS
HONORABLE DENNIS J. WALDRON, JUDGE PRESIDING

NO. 403-193"F"

STATE OF LOUISIANA

VS

ANTHONY SMITH                          VIO. R.S. 40 967(C)(2)

AUGUST 12, 1999

THE DEFENDANT ENTERED A PLEA OF GUILTY AS PER ATTACHED MINUTE
ENTRY.

THE STATE, THEN FILED A MULTIPLE BILL CHARGING THE DEFENDANT AS A
SECOND OFFENDER.  THE DEFENDANT WAS EXPLAINED ALL RIGHTS, INCLUDING
RIGHT TO FORMAL HEARING AND RIGHT TO REMAIN SILENT.  THE DEFENDANT
STATED HE UNDERSTOOD HIS RIGHTS AND WISHED TO ENTER A PLEA OF
GUILTY AS SECOND OFFENDER.

THE COURT, THEN SENTENCED THE DEFENDANT AS A SECOND OFFENDER UNDER
R.S. 15:529.1 TO SERVE:

THIRTY (30) MONTHS AT HARD LABOR IN THE CUSTODY OF THE DEPARTMENT
OF CORRECTIONS WITHOUT BENEFIT OF PROBATION OR SUSPENSION WITH
CREDIT FOR TIME SERVED FROM 11/15/98 UNTIL 8/12/99.  SENTENCE IS TO
RUN CONCURRENT WITH ANY SENTENCE OR PAROLE TIME FROM DATE OF
11/15/1998.

PURSUANT TO ART. 892 OF CODE OF CRIMINAL PROCEDURE, CRIMINAL CLERK
SHOULD NOTIFY DEPARTMENT OF CORRECTIONS.

ADVISED OF RIGHTS UNDER ARTICLE 930.8.

MINUTE CLERK:  DEBORAH HALLIGAN
COURT REPORTER:  DIONNE DAIGLE

CASE PROCESS
SET
FOR C 105
_____
DATE       TIME
NOTIFY: DEFT _____
JAIL _____ BOND _____
ATTY _____ SRTY _____
STATE _____ DEF _____
DOCKETED [] _____
ISSUED    [] _____
CK/CHRG   [] _____
CALENDAR  [] _____

SECTION F

PAGE NO.                                    DATE:  AUGUST 12, 1999

CASE NO. 403-193                            CHARGE: R.S. 40 967(C)(2)

STATE OF LOUISIANA

     VERSUS

ANTHONY SMITH

The defendant, in person, attended by counsel, KEITH HURTT, appeared before the Court this day and with the permission of the Court, withdrew his former plea of not guilty herein recorded, and in lieu thereof, entered a plea of guilty as charged: THE STATE THEN FILED MULTIPLE BILL AND THE DEFENDANT PLED GUILTY AS AN SECOND OFFENDER.

The Court, prior to accepting the guilty plea, advised the defendant personally of all of his rights and the fact that the defendant was giving up these rights by pleading guilty.

Specifically, the Court advised the defendant of the following rights:

1. The right to trial by judge or jury at no cost to the defendant;

2. the right to be presumed innocent until proven guilty beyond a reasonable doubt by the District Attorney;

3. the right to be present throughout trial;

4. the right to force the District Attorney to call witnesses who, under oath, would have to testify against the defendant;

5. the right to have the defendant's counsel cross-examine each of the state witnesses before they would be permitted to leave the witness stand;

6. the right to remain silent; or to take the witness stand and testify if the defendant chose to do so;

7. the right not to have the defendant's silence held against the defendant, or considered as possible guilt if the defendant chose not to testify;

8. the right to present a defense if the defendant chose to present one; including the right to have witnesses subpoenaed into court to testify on behalf of the defendant, and to present any other evidence that might be helpful or favorable to the defense;

9. the right of an appeal, if convicted, at no cost to the defendant.

The defendant personally waived each of these rights, as noted by the court reporter. The Court then found that there was a basis in fact and law for accepting the plea of guilty as having been knowingly, intelligently, freely and voluntarily made. Thereafter, the Court ordered the plea of guilty entered on the minutes of the Court. The defendant, through counsel, waived delays. The Court sentenced the defendant to serve: FOR SENTENCING SEE MULTIPLE BILL MINUTE ENTRY.

MINUTE CLERK:DEBORAH HALLIGAN
COURT REPORTER: DIONNE DAIGLE

---

CASE PROCESS

SET
FOR

DATE          TIME

NOTIFY DEFT

JAIL        BOND

ATTY         SRTY

STATE        DEF

DOCKETED  ☐

ISSUED    ☐

CK/CHRG   ☐

CALENDAR  ☐

```
6/27/00 12:12:17        ONLINE BOOKING INQUIRY SYSTEM        CWALGL20A  SRTCHG01
Folder # Last Name        First Name  MI R / S  D.O.B.     Type --Location--  A
  861119 SMITH            ANTHONY      _ B / M  6/15/1963  DOC  TP3 F1 U 016   A
  Alias:                                        Total Bond:      2,500.00
Book:  11/15/1998 22:59 CCN:  1355060  B of I #: _____   Sec/Ctl: 4 / 2
Release: _____
Disposition  Charge  Court Magist# Sec Arrest # --------- Sentence ----------
 Disp. Date           Type Docket# Sec Arr. Date Yrs Mon Day Other     Date

SENTENCED-D 40-967(C)2 S  345432  M   1661013      30                 8/12/1999
_  8/12/1999 Counts   1   403193  M  11/15/1998 POSS OF CRACK
  Details THIRTY (30) MONTHS DOC CFTS...                  Bond: _____
  Book: 11/15/1998 Next Court: _____   Early: _____ Flat: _____
  -------------------------------------------------------------------------
PAROLE REV  PARVIOL    S  _____ _           1
_  9/14/1999 Counts   1   _____ _  11/15/1998 PAROLE VIOLATION  Case# 76 384
  Details PAROLE REVOKED 090399          DOC #125586   Bond: Tanyagnba.
  Book: 11/15/1998 Next Court: _____   Early: _____ Flat:   O O Parish
  -------------------------------------------------------------------------
                                                                  More...


                              F5=MOTION
        F6=Display Mag. Docket    F7=Display CDC Docket  F12=Previous
```

DOC—
    2½ yrs. yflat
    on #403193M




USDC: #00-95
       #00-908


589-7633

```
6/27/00 12:12:17        ONLINE BOOKING INQUIRY SYSTEM         CWALGL20A SRTCHG01
Folder # Last Name       First Name  MI R / S   D.O.B.    Type --Location--  A
  861119 SMITH           ANTHONY      _ B / M  6/15/1963 DOC  TP3 F1 U 016   A
  Alias:                                        Total Bond:      2,500.00
Book:   11/15/1998 22:59 CCN:    1355060  B of I #: _____   Sec/Ctl:  4 / 2
Release: _____ ____ ___ _____ _____
Disposition  Charge  Court Magist# Sec Arrest # --------- Sentence ----------
 Disp. Date              Type Docket# Sec Arr. Date Yrs Mon Day Other       Date

HOLD-CT     40-967(C)2 S  ___ _____ __ _____ ___ ___ ___ _____
_ 11/25/1998 Counts  1     403193 F   __ _____     POSS OF CRACK
 Details FAILURE TO APPEAR _____        Bond: _____
 Book: 11/25/1998 Next Court: _____   Early: _____  Flat: _____
 ----------------------------------------------------------------------------
HOLD-CT     2M54-403   M  ___ 1661013 __ _____ ___ ___ ___ _____
_ 11/17/1998 Counts  1     674260 D   11/15/1998 DISTURBING THE PEACE
 Details _____        Bond:      2,500.00
 Book: 11/15/1998 Next Court: _____   Early: _____  Flat: _____
 ----------------------------------------------------------------------------
                                                              More...


                               F5=MOTION
       F6=Display Mag. Docket    F7=Display CDC Docket   F12=Previous
```

```
6/27/00 12:12:17         ONLINE BOOKING INQUIRY SYSTEM        CWALGL20A  SRTCHG01
 Folder # Last Name          First Name   MI  R / S   D.O.B.    Type --Location--  A
  861119  SMITH              ANTHONY      _  B / M  6/15/1963  DOC   TP3 F1 U 016  A
  Alias: _____  Total Bond: _____2,500.00
Book: __11/15/1998 22:59 CCN: __1355060  B of I #: _____  Sec/Ctl: 4 / 2
Release: _____ _____ _____
Disposition  Charge   Court  Magist#  Sec  Arrest #  --------- Sentence -----------
 Disp. Date          Type  Docket#  Sec  Arr. Date  Yrs  Mon  Day  Other      Date

HOLD-CT     2M54-405   M  _____  __  _1661013  ___ ___ ___ _____ _____
_ 11/17/1998 Counts __1  _674260 D  11/15/1998 PUBLIC DRUNKENESS
  Details  INCL/W                                          Bond: _____
  Book: 11/15/1998 Next Court: _____   Early: _____  Flat: _____
  -------------------------------------------------------------------------------
REFUSED     40-1033(1) S  345432  M  _1661013  ___ ___ ___ _____ _____
_ 11/20/1998 Counts __1  _____ __  11/15/1998 PROHIBIT DRUG PARAPHERNALIA 1S
  Details                                                   Bond: _____
  Book: 11/15/1998 Next Court: _____   Early: _____  Flat: _____
  -------------------------------------------------------------------------------
                                                                        Bottom


                              F5=MOTION
       F6=Display Mag. Docket    F7=Display CDC Docket  F12=Previous
```

**Display Spooled File**

```
File  . . . . . :   QSYSPRT                    Page/Line    1/1
Control . . . . .   _____                   Columns     1 - 78
Find  . . . . .
*...+....1....+....2....+....3....+....4....+....5....+....6....+....7....+...
    CASE:  403-193       D O C K E T   M A S T E R       DATE:  6/27/2000
  SECTION: F                                             TIME:  12:12:44
   CLASS: 3                                              PAGE:        1
                   ORLEANS PARISH CRIMINAL DISTRICT COURT
  ===============================================================================
  DF# DEFENDANT(S):       CNTS CHARGE(S):
  ===============================================================================
   1  SMITH, ANTHONY
                         1   RS 40 967 (C) (2)  A40P    BOND:     10,000.00
                             POSS OF CRACK
  ===============================================================================
    DATE    PROCEEDINGS
  ===============================================================================
  11/20/1998                                               WILLIAMS_W
            FILED BILL OF INFORMATION
            CAPIAS ISSUED
                                                            More...
F3=Exit    F12=Cancel    F19=Left    F20=Right    F24=More keys
```

**Display Spooled File**

File . . . . . . :    QSYSPRT                    Page/Line    1/21
Control . . . . .    _____                   Columns      1 - 78
Find . . . . . .    _____
*...+....1....+....2....+....3....+....4....+....5....+....6....+....7....+...
                    BOND SET $10,000.00
                    MAGISTRATE PAPERWORK FILED (M-345432, DOB: 6/15/63, F#861119).
    11/23/1998                                              WILLIAMS_W
                    ALLOTTED.  ARRAIGNMENT SET 11/25/98.  PDOJL.
    11/25/1998                                              WILLIAMS_W
                    DEFENDNAT SMITH FAILED TO APPEAR; COURT ISSUED ALIAS CAPIAS,
                    NO BOND.
     6/28/1999                                              WILLIAMS_W
                    SMITH - NO MINUTE ENTRY:  WRIT STATUS HEARING SET 6/29/99.
     6/29/1999                                              WILLIAMS_W
                    SMITH - DEFENDANT APPEARED; COURT APPOINTED MR. K. HURTT, OIDP
                    AND PLED NOT GUILTY.  HEARING ON MOTIONS SET 7/2/99.  PDOJL.
     7/01/1999                                                  TABBT
                    DEFENDANT APPEARED ATTENDED BY COUNSEL KEITH HURTT FOR MOTIONS.
                    COURT FOUND PROBABLE CAUSE AND DENIED MOTION TO SUPPRESS. TRIAL
                    SET FOR 8/12/99. PDOJL. NOTFIY ALL.
                                                            More...
**F3=Exit    F12=Cancel    F19=Left    F20=Right    F24=More keys**

**Display Spooled File**

```
File  .  .  .  .  .  :   QSYSPRT              Page/Line   1/43
Control .  .  .  .  .   _____              Columns     1 - 78
Find  .  .  .  .  :    _____
*...+....1....+....2....+....3....+....4....+....5....+....6....+....7....+...
```

```
  8/12/1999                                                    WILLIAMS_W
            SMITH - DEFENDANT APPEARED ATTENDED BY CUNSEL, KEITH HURTT AND
            WITHDREW FORMER PLEA OF NOT GUILTY AND PLED GUILTY AS CHARGED.
            STATE THEN FILED MULTIPLE BILL AND DEFENDANT PLED GUILTY AS AN
            SECOND OFFENDER, PLEA RECORDED.   SENTENCE AS A SECOND OFFENDER
            UNDER R.S. 15:529.1 TO:   THIRTY (30) MONTHS HARD LABOR IN CUSTODY
            OF DOC WITHOUT BENEFIT OF PROBATION OR SUSPENSION WITH CREDIT FOR
            TIME SERVED FROM 11/15/98 UNTIL 8/12/99.   SENTENCE TO RUN CON-
            CURRENT WITH ANY SENTENCE OR PAROLE TIME FROM DATE OF 11/15/98.
            ADVISED OF RIGHTS UNDER ART. 930.8.    C  L  O  S  E  D
  9/08/1999                                                    FOXD
            ARRAIGNMENT 9/9/99, NO MINUTE ENTRY-DARRYL. PDOJL.
  9/09/1999                                                    WILLIAMS_W
            SMITH - DEFENDANT PREVIOUSLY PLED GUILTY.   MOTION FILED TO
            LOUISIANA SUPREME COURT IS MOOT.
                                  C  L  O  S  E  D
                                                             More...
```

**F3=Exit    F12=Cancel    F19=Left    F20=Right    F24=More keys**

## STATE OF LOUISIANA

### CRIMINAL DISTRICT COURT FOR THE PARISH OF ORLEANS

-SECTION _F_

CASE# _403-193_

MOTION # _____

*Second Offender under article 15:529.1*

To the Criminal Sheriff for the Parish of Orleans-Greetings:

WHEREAS _Anthony Smith_ was by law lately convicted/submitted before the Criminal District Court for the Parish Of Orleans of Vio. R.S. _40:967 (C)(2) A 40 P_ and was thereupon sentenced, on the _12th_ day of _August_ 19 _99_ to imprisonment in the _D.O.C._

For _Thirty (30) Months_ _Without benefit of probation Or Suspension Sentence is to run Concurrent with any parish time_

with credit for time served from _11/15/98 Until 8/12/99 from dec 11/19/9_

Court Cost assessed/waived $_____ or serve _____ days additional in The Parish Prison.

( ) The execution/imposition of the above stated sentence was suspended and the defendant was placed on _____ probation for a period of _____ with all regular conditions of probation. Court also imposed special conditions of probation as follows:

_____

_____

_____

_____

NOW THEREFORE, you the said Sheriff, are hereby commanded to carry in full and entire execution every part of the aforesaid sentenced. And in so doing, this shall be your sufficient warrant and authority. _Dennis J. Waldron_

**Defendant's complete address:**

WITNESS _____ JUDGE, presiding in said Criminal District Court,

_____
Number & street

Section _F_, for the Parish of Orleans, in the Hall of Sittings of the

_____
City, state & zip code

same in City of New Orleans, this _12th_ day of _August_ in the year

_____
Phone number

of our Lord, one thousand nine hundred and _Ninety Nine_

_____
Date of birth

_D Halligan_ Minute Clerk

See Reverse for Fines & Fees:

Copies to-Sheriff's Office, J.A.'s Office, D.A.'s Office, Clerk's File, O.I.D.P